# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KRISTOPHER TORGERSON,**
        **Plaintiff,**

        v.                                    Case No. 16-CV-1432

**EDWARD WALL, WILLIAM POLLARD,
TONY MELI, JEREMY WESTRA, and
CYNTHIA RADTKE,**
        **Defendants.**

## DECISION AND ORDER

Plaintiff Kristopher Torgerson, a Wisconsin state prisoner who is representing himself, filed a civil rights action under 42 U.S.C. § 1983, alleging that defendants violated his First and Eighth Amendment rights at the Waupun Correctional Institution. This matter comes before me on plaintiff's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) and for screening of the complaint (ECF No. 1).

### Motion to Proceed without Prepayment of the Filing Fee

The Prison Litigation Reform Act ("PLRA") applies to this action because plaintiff was incarcerated when he filed this complaint. 28 U.S.C. § 1915. The law allows inmates to proceed with their lawsuits in federal court without pre-paying the $350 filing fee. *Id*. The inmate must comply with certain requirements, one of which is to pay an initial partial filing fee. *Id*.

On October 26, 2016, I assessed an initial partial filing fee of $11.87. (ECF No. 5). Plaintiff paid that amount on November 9, 2016. Therefore, I will grant plaintiff's motion to proceed without prepayment of the filing fee.

## **Screening of the Complaint**

The PLRA requires me to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I may dismiss an action or portion thereof if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim under the federal notice pleading system, plaintiff must provide me with a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

The factual content of the complaint must allow me to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

I follow the two-step analysis set forth in *Twobly* to determine whether a complaint states a claim. *Id*. at 679. First, I determine whether the plaintiff's legal conclusions are supported by factual allegations. *Id.* Legal conclusions not support by facts "are not entitled to the assumption of truth." *Id.* Second, I determine whether the

2

Case 2:16-cv-01432-LA   Filed 12/01/16   Page 2 of 11   Document 7

well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id.* Pro se allegations, "however inartfully pleaded," are given a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## Factual Allegations

In 2014, plaintiff was confined at the Wisconsin Secure Program Facility ("WSPF"). (ECF No. 1, at 2.) While confined at WSPF, plaintiff was charged with a homicide based on a 2012 statement given by Tyshun Meeks implicating plaintiff in the crime. (*Id.*) Plaintiff received discovery related to the homicide in March 2015, and he learned that two inmates at WSPF had made statements relating to the pending charges. (*Id.*) Plaintiff wrote to the security office at WSPF requesting two Special Protection Need ("SPN") forms. (*Id.*) As a result of plaintiff's SPN requests, plaintiff was placed in Temporary Lock-Up ("TLU") for his protection. (*Id.*)

A few days later, plaintiff was transferred to Waupun Correctional Institution ("WCI"). (*Id.*) Prison staff at WCI assigned plaintiff to housing in the North Cell Hall ("NCH"). (*Id.*) After the initial "transition process" was complete, plaintiff would be transferred to either the South Cell Hall ("SCH") or the Northwest Cell Hall ("NWCH") where all other inmates are housed. (*Id.*)

Plaintiff wrote to Captain Jeremy Westra on April 15, 2015 requesting two SPN forms. (*Id.*) He explained that Meeks and Robert Reifschneider, a different inmate who was also involved in the homicide, might also be confined at WCI. (*Id.* at 2-3.) Plaintiff received the SPN forms on April 16, 2015, and he filed the documents that same day explaining that he feared for his safety given that Meeks and Reifschneider were involved in the same homicide. (*Id.* at 3.) Plaintiff did not hear back on either request.

3

(*Id.*)

On April 21, 2015, plaintiff wrote to Westra and Warden William Pollard notifying them that he had filed two SPN forms and had not received a response. (*Id.*) Westra replied to the letter explaining that he had other pending SPN forms and that he should be able to review plaintiff's requests within the next week. (*Id.*) Plaintiff also approached Captain Cynthia Radtke about processing his SPN requests. (*Id.*) Radtke stated that she was aware of plaintiff's situation and plaintiff "should not have complained to the Warden because now his requests would stay at the bottom of the pile." (*Id.*)

Plaintiff filed an inmate grievance regarding the delay in responding to his requests. (*Id.*) On April 30, 2015, the Inmate Complaint Examiner ("ICE") recommended dismissing the grievance because "there was no time limit for Security to process the SPN requests." (*Id.*) Pollard accepted the recommendation and dismissed the grievance on May 7, 2015. (*Id.*)

On May 14, 2015, plaintiff was transferred to SCH, where Meeks was also housed. (*Id.*) As a result of being housed on the same side of the cell hall, plaintiff and Meeks saw each other at meals, during showers, at the library, and during recreation time. (*Id.* at 3-4.) Plaintiff wrote to Security Director Tony Meli and Department of Corrections Secretary Edward Wall informing them that he had spent the last few weeks attempting to make sure he and Meeks would not come into contact with one another. (*Id.* at 4.) Nevertheless, prison staff transferred plaintiff to the same side of the cell hall as Meeks. (*Id.*) Plaintiff did not hear back from either individual. (*Id.*)

On May 22, 2015, Meeks physically assaulted plaintiff as plaintiff was exiting his cell. (*Id.*) Prison staff restrained both inmates and took them to the segregation unit. (*Id.*)

4

Meli issued a conduct report against plaintiff charging him with assault. (*Id.*) Plaintiff then wrote to Westra, Meli, Pollard, and Wall explaining that they had "knowingly placed [plaintiff] in danger" and plaintiff was now "being punished for having to defend himself as result of their failure to act." (*Id.*)

Plaintiff wrote to Westra again on May 30, 2015 explaining that "in addition to being assaulted and possibly facing complications with his criminal case[,] he was given a conduct report…" (*Id.*) Plaintiff asked Westra to dismiss the conduct report and to send plaintiff another SPN form to file against Meeks. (*Id.*) Westra did not reply. (*Id.*) Plaintiff wrote to Westra on June 2, 2015 asking him to either approve the SPN or send him another SPN form. (*Id.*) Plaintiff's criminal attorney then wrote to Wall on June 3, 2015 requesting that plaintiff be transferred to a different institution. (*Id.* at 5.)

On June 10, 2015, Westra conducted a due process hearing on the conduct report and found plaintiff guilty of assault. (*Id.*) Westra sentenced plaintiff to 60 days in segregation and ordered restitution for the pepper spray used to stop the fight. (*Id.*) Plaintiff appealed the decision to Pollard, and Pollard affirmed. (*Id.*)

Plaintiff wrote to Westra on June 15, 2015 inquiring about the status of his SPN requests. (*Id.*) Westra replied stating that plaintiff would receive a memo once his requests got processed. (*Id.*) Plaintiff remains housed at WCI and his SPN requests have not been processed. (*Id.*)

Plaintiff seeks declaratory relief and damages. (*Id.* at 7.)

## **Legal Analysis**

To state a claim for relief under 42 U.S.C. § 1983, plaintiff must allege that defendants: 1) deprived him of a right secured by the Constitution or laws of the United

5

States; and 2) acted under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Liability under § 1983 is based on an individual's personal involvement in the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "However, '[a]n official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent.'" *Id.* (alterations in original) (quoting *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)). "[H]e 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.'" *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

<u>Eighth Amendment: Failure to Protect</u>

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon prison officials the duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This guarantee of safety includes protection from violence at the hands of other prisoners. *Id.* at 833. To state a claim for relief, plaintiff must allege that he is incarcerated under conditions posing a substantial risk of serious harm and that defendants acted with deliberate indifference to that risk. *Id.* at 834. Plaintiff must allege "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005).

Plaintiff states that he notified Westra, Pollard, Meli, and Wall by writing that he

feared that Meeks and Reifschneider might physically attack him due to the pending homicide case involving all three inmates. These individuals ignored plaintiff's letters and took no action to protect plaintiff. Meeks did actually physically attack plaintiff several days after plaintiff arrived at SCH. As a result of the attack, plaintiff suffered physical injuries, including pepper spray from the guards. Therefore, plaintiff may proceed with his failure to protect claim against Westra, Pollard, Meli, and Wall.

Plaintiff states that Radtke verbally acknowledged that she "was aware of [plaintiff's] situation" but failed to take any action to protect him. Therefore, plaintiff may also proceed with his failure to protect claim against Radtke.

## First Amendment: Retaliation

The First Amendment right to petition the government for redress of grievances includes the right of access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). In the prison context, inmates are entitled to utilize "administrative remedies that must be exhausted before a prisoner can seek relief in court" without the threat of recrimination. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000); *see also Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Any act taken in retaliation for utilizing grievance procedures violates the First Amendment. *DeWalt*, 224 F.3d at 618.

To state a claim for retaliation, plaintiff must allege that he: (1) engaged in activity protected by the First Amendment; (2) suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 553. At a minimum, plaintiff must reference the suit or grievance spawning the

7

retaliation and the acts constituting the retaliatory conduct. *Walker v. Thompson*, 288 F.3d 1005, 1012 (7th Cir. 2002).

Plaintiff states that he filed an inmate grievance regarding "the delay in responding to his requests for separation," and as a result of that protected First Amendment activity, Meli, Westra, and Radtke retaliated against him by "not processing his SPN requests, by placing him near the inmate he warned them about, and by charging and finding him guilty of assault for protecting himself." (ECF No. 1, at 6.) Plaintiff explains that he is "unable to relay any threats or conflicts he has with other inmates out of fear that defendants will use this information to orchestrate another situation where he is vulnerable to those who wish him harm." (*Id.* at 7). Defendants' actions could deter inmates from utilizing the prison's grievance system to resolve disputes in the future, and the timing of defendants' actions, several days after plaintiff filed his grievance, could suggest retaliatory animus on their part. Therefore, plaintiff may proceed with his First Amendment retaliation claims against Meli, Westra, and Radtke.

### State Law: Intentional Infliction of Emotional Distress

Plaintiff also seeks to proceed with a claim for intentional infliction of emotional distress against Westra. Under Wisconsin law, plaintiff must allege four elements to state a claim: (1) defendant's conduct was purposeful and intended to cause plaintiff emotional distress; (2) the conduct was extreme and outrageous and the average member of the community would regard defendant's conduct as a complete denial of plaintiff's dignity as a person; (3) the conduct was a cause-in-fact of plaintiff's injury; and (4) plaintiff suffered an extreme disabling emotional response to the conduct. *McKissick*

8

*v. Schroeder*, 235 N.W.2d 686, 690 (Wis. 1975) (citing *Alsteen v. Gehl*, 124 N.W.2d 312, 318 (Wis. 1963)).

Plaintiff states that Westra purposely refused to process his SPN requests, resulting in plaintiff experiencing "extreme fear and constant paranoia." (ECF No. 1, at 7.) Plaintiff has no idea when his next encounter with Meeks will be, and as a result, has been unable to eat or sleep properly. At this stage of the litigation, plaintiff's allegations are sufficient to state a claim for intentional infliction of emotional distress against Westra. Because plaintiff's state law claim arises from the same facts and allegations as his § 1983 claim, plaintiff may proceed with his intentional infliction of emotion distress claim against Westra in this court. *See* 28 U.S.C. § 1367(a). ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

## ORDER

**IT IS THEREFORE ORDERED** plaintiff's motion for leave to proceed without prepayment of the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Edward Wall, William Pollard, Tony Meli, Jeremy Westra, and Cynthia Radtke.

**IT IS ALSO ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Edward Wall, William Pollard, Tony

9

Meli, Jeremy Westra, and Cynthia Radtke shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS ALSO ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the **$338.13** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the Waupun Correctional Institution where plaintiff is confined.

**IT IS ALSO ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge